UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ELAINE STEVENSON,

        Plaintiff,

   v.

COUNTY OF SACRAMENTO, CRAIG HILL, JOHN McGINNESS and DOES 1 through 10, inclusive,

        Defendants.

NO. CIV. S 03-0201 MCE PAN

MEMORANDUM AND ORDER

----oo0oo----

Through this motion, Defendants move for Judgment as a Matter of Law ("JMOL") under Federal Rule of Civil Procedure[1] 50(b).[2] Alternatively, the defense requests that the Court order a new trial on grounds that the verdict reached by the jury was

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] At the end of Plaintiff's rebuttal case defense counsel previously moved for JMOL under 50(a). That motion, which was denied, was a prerequisite for bringing the present Rule 50(b) motion. Janes v. Wal-Mart Stores, Inc., 279 F.3d 883, 886-87 (9th Cir. 2002).

1

against the weight of the evidence and resulted in a miscarriage of justice.  As set forth below, Defendants' Motion is denied.

**ANALYSIS**

**A. Motion for Judgment as a Matter of Law**

A JMOL is proper only if "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury."  White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002).  To justify relief through a JMOL, there must be a "complete absence of probative facts to support ... [the] conclusion reached so that no reasonable juror could have found for ... [the] nonmoving party."  Eich v. Board of Regents for Central Missouri State Univ., 350 F.3d 752, 761 (8th Cir. 2003).

Although Defendants also request a Judgment Notwithstanding the Verdict ("JNOV"), that in essence is an outdated reference to what now is properly denominated as a JMOL.  *See* United States ex rel. A Homecare, Inc., v. Medshares Management Group, Inc., 400 F.3d 428, 447 n. 14 (6th Cir. 2005).  The standards for granting a JMOL and JNOV are identical.

Defendants argue that they are entitled to JMOL because of the jury's finding that Defendant McGinness would have made the decision to transfer Elaine Stevenson irrespective of her protected speech arising from the People v. Luna case.  Because McGinness made the ultimate decision to transfer Stevenson out of the Homicide Bureau, the defense contends that Defendant Hill cannot be liable since McGinness' decision was based on

legitimate grounds.

In Mount Healthy City Bd. Of Educ. v. Doyle, 429 U.S. 274 (1977), the Supreme Court articulated the proper analysis for assessing claims of illegal retaliation for the exercise of protected speech. Under that analysis, once it is determined that the speech in question is protected (an uncontroverted fact in the present case), a plaintiff must show that such speech was a "substantial" or "motivating" factor in the decision to take adverse action against him/her. If the plaintiff carries that burden, then the burden shifts to the defendant to show, by a preponderance of the evidence, that the same decision would have been reached even in the absence of the protected conduct. Id. at 287.

The defense claims here that because the jury found (in Question No. 3 of its verdict) that Stevenson's protected speech was not a substantial factor in McGinness' decision to transfer her, any improper motive of Hill's in merely recommending the transfer is "superceded and nullified". The defense hence contends that no damages can flow from McGinness' decision under a Mount Healthy analysis.

To support its analysis, the defense relies on out-of-circuit authority, most prominently the Eighth Circuit's decision in Ingrum v. Nixa Reorganized School Dist., 966 F.2d 1232 (8th Cir. 1992). In that case, the jury awarded the plaintiff damages even through it found that the school district would not have renewed plaintiff's teaching contract irrespective of her protected speech in complaining about certain conduct on the part of the school principal. The district judge entered JNOV on

3

grounds that this posed an inconsistency.  In affirming the district court's decision in that regard, the Eighth Circuit found it did not matter that the principal's underlying recommendation was "impermissibly motivated".  Because only the school board had actual power to nonrenew plaintiff's contract, the Ingrum court reasoned that the board's decision not to do was made regardless of plaintiff's protected speech.  According to the defense herein, the decision in Ingrum is on all fours with the present case and mandates that JMOL be granted.

     The problem with Defendants' argument, as Plaintiff points out, is that Ingrum is not Ninth Circuit precedent, and cases that have been decided by the Ninth Circuit appear inapposite. In Ostad v. Oregon Health Sciences University, 327 F.3d 876 (9th Cir. 2002), a medical resident claimed that his termination by Oregon Health Sciences University ("OHSU") was motivated by his questioning of billing practices employed by an OHSU physician, Dr. Alan Seyfer.  Plaintiff's challenge to Dr. Seyfer's decision to place him on administrative leave, allegedly as a result of patient treatment issues, was referred to a panel of five doctors for review.  That panel, which knew nothing about plaintiff's challenge to Dr. Seyfer's billing practices, ultimately decided that plaintiff should be terminated.  At trial, the jury nonetheless found that defendants had failed to establish that plaintiff would have been terminated in the absence of his protected speech activity in protesting the billing practices. The district court denied defendants' JMOL request, which was made on grounds that the panel's decision to terminate plaintiff without knowledge of those activities cut off any chain of

4

1 causation between Seyfer's improper motives and plaintiff's
2 ultimate termination.
3     The Ninth Circuit, after framing the issue in terms of
4 whether the jury "properly could have found, on the record before
5 it, that [plaintiff's] protected conduct played a substantial or
6 motivating factor in the decision to terminate his residency",
7 flatly disagreed with the defense argument that the panel's
8 "independent decision severed any link between Seyfer's allegedly
9 improper motives and [plaintiff's] termination." Id. at 882.
10 The Ostad court approvingly cited the Ninth Circuit's earlier
11 decision in Gilbrook v. City of Westminster, 177 F.3d 838, 855
12 (9th Cir. 1999). Gilbrook held that a subordinate like Defendant
13 Hill cannot use the nonretaliatory motive of a superior
14 (McGinness) as a shield against liability if that superior would
15 never have considered adverse action *but for* the subordinate's
16 retaliatory conduct.  Although the Ostad court also cited
17 Gilbrook for the proposition that it did not express any opinion
18 on what the result would be if the facts "showed that the final
19 decision-maker made a wholly independent, legitimate decision to
20 discharge the plaintiff, uninfluenced by the retaliatory motives
21 of a subordinate" (Id. at 883), the circumstances of Ostad
22 demonstrated that Dr. Seyfer laid the groundwork for and
23 initiated the discipline hearings that resulted in plaintiff's
24 termination.  The Ninth Circuit therefore found that Seyfer could
25 properly be held liable for his recommendation even though the
26 panel, as the final decision maker, was not aware of plaintiff's
27 protected activity.
28     As indicated above, the Court, in determining whether JMOL

5

is appropriate, must resolve all inferences in favor of Detective Stevenson as the non-moving party. Utilizing that standard, the jury could have determined that Hill's improperly-motivated recommendation in fact "laid the foundation" for the process leading to Stevenson's transfer. That factor, along with the fact that Dr. Seyfer's testimony as to the plaintiff's competence was relied on by the hearing panel, was what the Ninth Circuit accepted in Ostad as the underpinning for Seyfer's liability. Here, the jury heard testimony that McGinness himself had no adverse dealings with Detective Stevenson prior to discussions initiated by Defendant Hill about Plaintiff's allegedly unacceptable behavior, and in fact McGinness had given Plaintiff positive performance evaluations. Given those circumstances, the jury could have reasonably concluded that McGinness would not have taken the action he did absent Hill's recommendations -- which the jury found were improperly motivated.

As was the case in Gilbrook, the jury found here that while Hill's initial recommendation was made with a retaliatory motive, the ultimate decision by McGinness did not share that motive. Nonetheless, where the retaliatory motive "set in motion the chain of events that led .... to the adverse employment action", an employee like Hill is not immunized against liability. Gilbrook, 177 F.3d at 855. That reasoning supports the jury's findings against Hill in this case. In addition, the evidence, as construed most favorably to Stevenson, does not unequivocally show that McGinness' decision was "wholly independent" from the recommendations he received from Hill so as to absolve Hill from any liability.

1  Because the jury's finding is not incompatible either with
2 the facts or with applicable case law, JMOL is inappropriate and
3 must be denied.

**B.  Motion for New Trial**

As an alternative to their request for JMOL, Defendants also argue that a new trial should be ordered because the verdict ultimately reached by the jury was against the weight of the evidence.  A district court has discretion to grant a new trial when the jury's verdict is contrary to the "clear weight of the evidence", or is based on false evidence. Rattrary v. City of Nat'l City, 51 f.3d 793, 800 (9th Cir. 1994).  A verdict is against the clear weight of the evidence when, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed by the jury."  Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987).  A new trial may also be ordered when needed to prevent a "miscarriage of justice". Rattray, 512 F.3d at 800.  In ruling on a motion for new trial, "the judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.2d 176, 190 (9th Cir. 1989).

In support of their request for a new trial, the defense makes the same argument enumerated above -- that Hill was not the ultimate decision maker -- in attempting to argue that the verdict was against the weight of the evidence and/or would result in a miscarriage of justice.  Defendants also argue that

7

virtually every witness except Plaintiff and her partner, Dave Wright, testified that Plaintiff was confrontational and disrespectful. They argue that the jury's verdict should not stand against that "overwhelming" evidence. Plaintiff, on the other hand, argues that Defendant Hill made the recommendation to transfer Plaintiff Stevenson just two months after she testified in the People v. Luna suppression hearing, armed with instances of alleged misconduct which for the most part occurred after Stevenson reported Hill's conduct regarding Luna to the District Attorney.

Although there was considerable evidence that Stevenson was transferred due to her own volatile behavior, evidence indicating that Hill made the recommendation to transfer Plaintiff soon after she testified at the People v. Luna suppression hearing was also presented. The jury decided that Hill's retaliatory animus as a result of People v. Luna prompted the process that led to her transfer. That conclusion was a plausible one and not contrary to the clear weight of the evidence. The Motion for New Trial is denied.

**C.  Verdict Against Defendant McGinness**

In assessing a verdict like the one returned by the jury in the initial phase of this case, which consists of special interrogatories comprising a general verdict, the Court has a duty under the Seventh Amendment to harmonize any seemingly inconsistent answers if permitted by a fair reading of the verdict as a whole. *See* White v. Ford Motor Co., 312 F.3d 998, 1005 (9th Cir. 2002).

In this case, although the jury's answer to Question No. 4 found that Defendant McGinness would have transferred Plaintiff regardless of her protected speech arising from the People v. Luna case (in response to the same question the jury also found that Defendant Hill would not have recommended her transfer absent her involvement in Luna), the jury nonetheless proceeded to conclude in response to Question No. 5 that Stevenson had suffered damage as a result of the acts or omissions of both Hill and McGinness. In Question No. 6, the jury determined that Plaintiff suffered past economic loss totaling $20,000 and non-economic damages in the amount of $75,000 due to those acts or omissions.

At oral argument on the post-trial motions in this case, held on September 26, 2005, defense counsel contended that a fair reading of the verdict as a whole cannot support imposition of any damages against Defendant McGinness, since the jury concluded that he acted without knowledge of Plaintiff's protected speech.

The Court agrees. The jury concluded that Hill did have retaliatory animus in recommending Plaintiff's transfer and could therefore incur liability on that basis for the transfer pursuant to the Ninth Circuit's holdings in Ostad and Gilbrook as discussed above. However, the jury also concluded in its answers to the special interrogatories that McGinness was not impermissibly motivated in making the actual decision to transfer Plaintiff. As such McGinness is not personally liable for that decision, and cannot be responsible for resulting *monetary* damages, even if Plaintiff was in fact "damaged" by his approval of Plaintiff's transfer. In the Court's view, this is the only

9

fair reading of the jury's response to Question No. 5 which must be viewed in context of the remainder of the verdict, and is therefore the only reading of the verdict that harmonizes any potential inconsistency as required by the Ninth Circuit in White.  Hence, the monetary damages awarded by the jury can only be against Defendant Hill.

Concurrently with the filing of this order a Second Amended Judgment will also be filed which clarifies that the monetary damages assessed by the jury are against Defendant Hill, only.

**CONCLUSION**

Based on the foregoing, Defendants' Motion for Judgment as a Matter of Law, or alternatively for a new trial, is DENIED.  The judgment in this matter will, however, be amended to reflect that the monetary damages imposed by the jury are solely against Defendant Hill and that a mistrial was declared on the issue of punitive damages.

IT IS SO ORDERED.

DATED: September 28, 2005

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

10